# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MEI GUO | : | |
| | : | |
| Petitioner, | : | Case No. _____ |
| v. | : | |
| | : | |
| THE HON. JULIE A. MANNING, | : | |
| Solely in her capacity as United States | : | |
| Bankruptcy Court Judge for the District | : | |
| of Connecticut, Bridgeport Division | : | June 20, 2023 |
| | : | |
| Respondent. | : | |
| | : | |

## MEI GUO'S PETITION FOR WRIT OF MANDAMUS

Aaron A. Romney (ct28144)
James M. Moriarty (ct21876)
ZEISLER & ZEISLER, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT  06604
(203) 368-4234
(203) 368-5485 (fax)
aromney@zeislaw.com
jmoriarty@zeislaw.com

Lee Vartan (*Pro Hac Vice*)
Sam Della Fera, Jr. (*Pro Hac Vice*)
Melissa Wernick (*Pro Hac Vice*)
lvartan@csglaw.com
sdellafera@csglaw.com
mwernick@csglaw.com
CHIESA SHAHINIAN & GIANTOMASI PC
105 Eisenhower Parkway
Roseland, NJ 07068
(973) 530-2107
(973) 530-2307 (fax)

**ATTORNEYS FOR MEI GUO**

# **TABLE OF CONTENTS**

I.   INTRODUCTION AND RELIEF SOUGHT ................................................................. 1

II.   JURISDICTION ................................................................................................ 3

III.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY.................................... 3

A.   The Adversary Proceeding........................................................................................ 3

B.   The Application for Prejudgment Remedies and Injunctions ................................... 4

C.   The Trustee's Motion for Summary Judgment on the First Counterclaim .............. 7

D.   The Trustee's Motion for Summary Judgment on the Second Counterclaim and Petitioner's and HK USA's Motion to Dismiss ................................................................................................... 8

E.   There Are No Longer Any Viable Claims to Support the Orders Against Petitioner........................ 10

F.   The Motion to Terminate the Orders ..................................................................... 13

IV.   ARGUMENT .................................................................................................. 14

   A.   The Mandamus Standard .................................................................................... 14

   B.   Petitioner Has No Other Adequate Means to Obtain the Relief She Desires.................................. 15

   C.   A Writ of Mandamus Is Appropriate Under the Circumstances..................................................... 16

      i.   The Value of the Lady May .......................................................................... 16

      ii.   The Escrow Funds....................................................................................... 18

   D.   The Right of Issuance of the Writ Is Clear and Undisputable ......................................................... 20

V.   CONCLUSION................................................................................................ 21

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bernhard Thomas Bldg. Sys., LLC v. Dunican*,
  286 Conn. 548 (2008) ...............................................................................................20

*Gibbs v. Mase*,
  11 Conn. App. 289 (Conn. App. 1987).....................................................................15

*Gilead County Services, Inc. v. Town of Cromwell*,
  432 F. Supp. 3d 46 (D. Conn. 2019) .........................................................................12

*Johansson v. Black*,
  Civ. No. 97057288S, 1997 Conn. Super. LEXIS 1034 (Conn. Super. April 14,
  1997) .........................................................................................................................19

*MDS Consulting Servs. v. Tedford*,
  Civ. No. 960566222, 1998 Conn. Super. LEXIS 102 (Conn. Super. Jan. 12,
  1998) .........................................................................................................................20

*Metro. Dist. Comm'n v. Conn. Res. Recovery Auth.*,
  Civ. No. 10 5034498S, 2013 Conn. Super. LEXIS 4364 (Conn. Super. Oct. 1,
  2013) .........................................................................................................................19

*Murphy v. Hanberg*,
  Civ. No. 000093198S, 2002 Conn. Super. LEXIS 3833 (Conn. Super. Nov.
  26, 2002) ...................................................................................................................19

*Salim v. Nisselson*,
  Civ. No. 15-4629, 2015 U.S. Dist. LEXIS 177034 (S.D.N.Y. July 8, 2015) ...................14, 16

*SEC v. Rajaratnam*,
  622 F.3d 159 (2d Cir. 2010).....................................................................................14

*Shovah v. Roman Catholic Diocese of Albany (In re Roman Catholic Diocese of
  Albany)*,
  745 F.3d 30 (2d Cir. 2014)........................................................................................14

*In re Tiana Queen Motel, Inc.*,
  749 F.2d 146 (2d Cir. 1984)......................................................................................14

*Town of New Hartford v. Conn. Res. Recovery Auth.*,
  291 Conn. 502 (Conn. 2009).........................................................................16, 18, 20

*United States v. Prevezon Holdings, Ltd.*,
    839 F.3d 227 (2d Cir. 2016)..............................................................14, 15, 21

*Wintonbury Group v. Roantree*,
    39 Conn. App. 149 (Conn. App. 1995).......................................................15

**Statutes**

11 U.S.C. § 323 ...........................................................................................3, 4

11 U.S.C. § 541 ...........................................................................................8, 10

11 U.S.C. § 542 .............................................................................................10

11 U.S.C. § 1104 ..........................................................................................3, 4

28 U.S.C. § 1292 ............................................................................................16

28 U.S.C. § 1361 ..........................................................................................1, 3

28 U.S.C. § 1651 ........................................................................................1, 14

Conn. Gen. Stat. § 52-278d.....................................................................12, 15, 17

Conn. Gen. Stat. § 52-278k.......................................................................7, 15, 17

Conn. Gen. Stat. § 52-278l.............................................................................15

**Rules**

Fed. R. Bankr. P. 2012.......................................................................................3

Fed. R. Bankr. P. 8004.....................................................................................16

Pursuant to 28 U.S.C. §§ 1361 and 1651, Petitioner Mei Guo ("Petitioner") respectfully petitions this Court for a writ of mandamus requiring the Hon. Julie A. Manning, United States Bankruptcy Court Judge for the District of Connecticut, Bridgeport Division (the "Bankruptcy Court" or "Respondent"), to enter an order dissolving the prejudgment remedy (the "PJR Order") and preliminary injunction (the "Injunction Order" and collectively with the PJR Order the "Orders," Doc. Nos. 140 and 142) entered against Petitioner on March 17, 2023.[1]

## I.   INTRODUCTION AND RELIEF SOUGHT

Petitioner is entitled to a writ of mandamus. Prejudgment restraints cannot continue post-judgment after the plaintiff has obtained, or is already secured by, all relief sought. But that is precisely what the Bankruptcy Court ordered here contrary to clearly established Connecticut law.

This case arises out of an Adversary Proceeding (the "Adversary Proceeding") between Luc Despins, Chapter 11 Trustee (the "Trustee") of the estate (the "Estate") of Ho Wan Kwok (the "Debtor"), on the one hand, and Petitioner and HK International Funds Investments (USA) Limited, LLC ("HK USA"), on the other. Petitioner is the sole member of HK USA. HK USA first brought the Adversary Proceeding against the Debtor seeking declaratory relief from the Bankruptcy Court that a yacht, the Lady May, was property of HK USA. Upon his appointment, the Trustee was substituted for the Debtor for all purposes and filed an Answer and Counterclaims in the Adversary Proceeding that, among other things, sought a declaration that the yacht was instead property of the Estate. Simultaneously, the Trustee made applications for prejudgment restraints against Petitioner and HK USA.

---

[1] The PJR Order is attached hereto as Exhibit A; the Injunction Order is attached hereto as Exhibit B.

On March 17, 2023, the Bankruptcy Court entered the PJR Order against Petitioner in the amount of $68,732,400. Respondent arrived at that figure by summing the purported value of the Lady May, $31,732,400, with the $37 million in escrowed funds (the "Escrow Funds") provided to secure the yacht's return to Connecticut. Respondent also entered the Injunction Order in aid of the PJR Order.

There is no longer any basis to maintain the Orders. On March 27, the Bankruptcy Court granted summary judgment in the Trustee's favor on the First Counterclaim (the "First Summary Judgment Order"), determining that the Lady May is property of the Estate; the Trustee has already exercised his rights under the First Summary Judgment Order by seizing the Lady May. On that basis alone, Respondent must reduce the amount of the Orders by $31,732,400. On May 18, the Bankruptcy Court granted summary judgment on the Trustee's Second Counterclaim (the "Second Summary Judgment Order" and collectively with the First Summary Judgment Order, the "Summary Judgment Orders"), determining that HK USA is the Debtor's alter-ego, and, as a result, that the Escrow Funds are property of the Estate.

The Summary Judgment Orders (1) have either been fully effectuated, subject to Petitioner's and HK USA's right to appeal; or (2) are fully secured and not entered against Petitioner. More specifically, with respect to the First Summary Judgment Order, the Trustee has exercised his rights therein by taking possession and control of the yacht. As for the Second Summary Judgment Order, it is secured by the Escrow Funds, and regardless, arose from an alter ego claim against *the Debtor* and is not a judgment against Petitioner. The Trustee's remaining Counterclaims were either not pled against Petitioner or were pled in the alternative to the First and Second Counterclaims. As a result, there is no longer any basis on which to maintain the

Orders against Petitioner, but the Bankruptcy Court has refused to vacate the Orders. Thus, Petitioner is entitled to a writ of mandamus directing the Bankruptcy Court to vacate the Orders.

## II.    JURISDICTION

This Court has jurisdiction over this Mandamus Petition pursuant to 28 U.S.C. § 1361: "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

## III.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    The Adversary Proceeding

The Debtor commenced the underlying bankruptcy case (the "Bankruptcy Case") on February 15, 2022. (*See* Voluntary Petition for Individuals Filing for Bankruptcy, Case No. 22-50073, Doc. No. 1, a copy of which is attached hereto as Exhibit C). On April 11, 2022, HK USA commenced the Adversary Proceeding in the Bankruptcy Case against the Debtor and Pacific Alliance Asia Opportunity Fund, L.P. ("PAX"), captioned *HK International Funds Investments (USA) Limited, LLC v. Ho Wan Kwok and Pacific Alliance Asia Opportunity Fund, L.P.*, Adv. Pro. No. 22-05003 ("Adversary Proceeding").[2] The gravamen of HK USA's single claim for relief in the Adversary Proceeding is that it owns the Lady May. (See Adversary Proceeding, Doc. No. 1, a copy of which is attached hereto as Exhibit D.)

On July 8, 2022, the Bankruptcy Court entered an order appointing the Trustee to administer the Estate. (*See* Order Granting Appointment of Chapter 11 Trustee, Bankruptcy Case Doc. No. 523, a copy of which is attached hereto as Exhibit E.) Upon his appointment, the Trustee

---

[2] PAX is one of the Debtor's largest creditors. At the time of the Debtor's bankruptcy filing, PAX was pursuing collection of a judgment against the Debtor, including claims that the Debtor owned the Lady May, and the Lady May was subject to execution to partially satisfy PAX's judgment.

was substituted for the Debtor as a party to the Adversary Proceeding by operation of law.  (*See* Fed. R. Bankr. P. 2012; 11 U.S.C. §§ 323 and 1104; *see also* Ex. E). On September 23, 2022, the Trustee filed an Answer and Counterclaims, and impleaded Petitioner as a counterclaim defendant. (Trustee's Answer and Counterclaims, Adversary Proceeding, Doc. No. 36, a copy of which is attached hereto as Exhibit F).

The Trustee alleged five counterclaims against HK USA and Petitioner.  *Id.*  The First Counterclaim sought a declaratory judgment that the Lady May is property of the Estate.  The Second Counterclaim sought a declaratory judgment that HK USA is the Debtor's alter ego.  The Third Counterclaim, pleaded in the alternative to the Second Counterclaim, seeks a declaratory judgment that the entire membership interest in HK USA is property of the Estate.  The Fourth Counterclaim, pleaded in the alternative to the First Counterclaim, seeks to recover the Lady May, or its value, under the theory that the Debtor fraudulently transferred it to HK USA or Petitioner. The Fifth Counterclaim, pleaded in the alternative to the First and Second Counterclaims, alleges that HK USA—and not Petitioner—negligently moved the Lady May from New York in violation of an order of the New York Supreme Court and thereby caused the Debtor to be held in contempt and subject to a fine in excess of $134 million.

### B.  <u>The Application for Prejudgment Remedies and Injunctions</u>

Contemporaneous with his Answer and Counterclaims, the Trustee filed an application for prejudgment remedy against Petitioner (the "PJR Application").  (Adversary Proceeding, Doc. No. 37, a copy of which is attached hereto as Exhibit G).  Thereafter, the Trustee filed a motion for preliminary injunction in aid of prejudgment remedy against Petitioner (the "Injunction Application" and collectively with the PJR Application, the "Restraint Motions").  (Adversary Proceeding, Doc. No. 50, a copy of which is attached hereto as Exhibit H).

On March 15, 2023, Respondent presided over a hearing on the Restraint Motions.[3] (*See* March 15, 2023 Text Order, Adversary Proceeding, Doc. No. 138.)  Early that morning, before the hearing commenced, the Debtor was arrested pursuant to a multi-count federal indictment alleging financial crimes. (*See United States v. Kwok*, et al., Crim. No. 23-118, Doc. No. 2 (S.D.N.Y. Mar. 15, 2023), a copy of which is attached hereto as Exhibit I).  The arrest of the Debtor just a few hours before the hearing, coupled with passing references to Petitioner in the indictment, caused Petitioner and HK USA to stipulate to the relief sought in the Restraint Motions (the "PJR Stipulation"). Simply stated, Petitioner was left with little choice in light of the fast-breaking developments and the Bankruptcy Court's steadfast refusal to adjourn the proceedings for more than 24 hours.

Respondent entered the Orders on March 17, 2023, following a brief hearing on March 16, of which Petitioner and HK USA were provided no notice.  (*See* Mar. 16, 2023 electronic mail sent at 4:41p.m. scheduling a remote hearing for 4:40 p.m. on the same day, attached hereto as Exhibit J).  The PJR Order against Petitioner was entered in the amount of $68,732,400.  (*See* Ex. A).  That amount was the sum of the value of two assets: the Lady May, with an assigned value of $31,732,400—based on the purchase price of the Lady May as alleged in footnote 81 on page 23 of the Trustee's Counterclaims—and the Escrow Funds that HK USA had borrowed and placed in escrow as a bond to secure the return of the Lady May to Connecticut pursuant to a Stipulated Order entered by the Bankruptcy Court in April 2022.  (*See Id*.; Mar. 16, 2023 Trans. of Hearing Before the Hon. Julie A. Manning United States Bankruptcy Judge at 7:4; 8:6-9; 34:4-7, a copy of

---

[3] The hearing on the Restraint Motions had been previously scheduled and continued by agreement of the parties.

which is attached hereto as Exhibit K; Mar. 16, 2023 electronic mail from the Bankruptcy Court to counsel, a copy of which is attached hereto as Exhibit L).[4]

The prejudgment remedy order against HK USA was entered in the amount of $202,732,400.00.  (*See* Ex. A).  The difference between that amount and the amount in the Orders was due to the Fifth Counterclaim, which was pled against HK USA alone.  As a result, the Bankruptcy Court excluded from the Orders the $134 million sought by the Trustee in the Fifth Counterclaim:

> MR. ROMNEY: Your Honor, we're not relitigating anything. The complaint says what it says and nothing that took place at yesterday's hearing can change that. Count 5 is – I'm looking at one – paragraphs 137 to 141. I'm not great at math. Is that four or five paragraphs? They don't mention any negligence on the part of Ms. Guo. It will take two minutes to read it. The only word – the only place the word negligence is in their 70- page counterclaim, other than in Count 5, is in Paragraph 6, which specifically refers only to HK [USA]. That's point number one.
>
> *          *          *
>
> They did not plead veil piercing against Ms. Guo and HK [USA], and they did not plead negligence against Ms. Guo.

(Ex. K, Mar. 16, 2023 Trans. at 27:18-28:3; 28:18-19).

> THE COURT:  And Count 5, judgment with a value equal to or greater than the 134 million.  Now, we've – I've just said that I will – I will allow the – I'll only add the 134 million at this point to the judgment amount of HK [USA] in the order.

(*Id.* at 30:12; 31:14-18).

---

[4] Some of the Escrow Funds have been expended, with Bankruptcy Court approval, to maintain the Lady May.  (*See* Order Approving Emergency Motion of Chapter 11 Trustee for Entry of Order Modifying Repair Reserve Order, Bankruptcy Case, Doc. No. 1608, a copy of which is attached hereto as Exhibit M).

Petitioner agreed to the PJR Stipulation only after the Bankruptcy Court expressly agreed on the record that it was without prejudice to Petitioner's right to seek to modify the Orders based on changed circumstances, in accordance with the Connecticut General Statutes.  (*See* Mar. 15, 2023 Trans. of Hearing Before the Hon. Julie A. Manning United States Bankruptcy Judge, a copy of which is attached hereto as Exhibit N; *see also* Conn. Gen. Stat. § 52-278k).

### C.  The Trustee's Motion for Summary Judgment on the First Counterclaim

On March 19, 2023, the Trustee moved for summary judgment on his First Counterclaim on the basis of collateral estoppel (the "First Summary Judgment Motion").  (*See* Adversary Proceeding, Doc. No. 146, a copy of which is attached hereto as Exhibit O.  The next day, the Trustee also moved for expedited consideration of the motion.  (Adversary Proceeding, Doc. No. 149, a copy of which is attached hereto as Exhibit P).  On March 22, 2023, the Bankruptcy Court granted the motion to expedite, required HK USA to file its opposition by Sunday, March 26, 2023, at 4 p.m., and scheduled a hearing for the following day at 11:00 a.m.  (*See* March 22, 2023 Text Order, Adversary Proceeding, Doc. No. 153).  Respondent granted the Trustee's First Summary Judgment Motion from the bench.  Respondent followed her oral ruling with a written order and a separate written memorandum of decision (referred to collectively, and as previously defined, as the "First Summary Judgment Order").  (*See* Adversary Proceeding, Doc. No. 172 (March 27, 2023, Order Granting Motion of Chapter 11 Trustee for Estate of Ho Wan Kwok for Partial Summary Judgment), a copy of which is attached hereto as Exhibit Q; Adversary Proceeding, Doc. No. 177 (March 30, 2023, Supplemental Memorandum of Decision in Support of Oral Ruling Granting Motion for Partial Summary Judgment), a copy of which is attached hereto as Exhibit R).[5]

---

[5] The First Summary Judgment Order was amended on April 6, 2023 to include a second vessel

The First Summary Judgment Order provides that "[e]ffective as of 2:55 p.m. on March 27, 2023, the Lady May (as defined [herein]) is property of the Debtor's chapter 11 estate (the "Estate") pursuant to 11 U.S.C. § 541(a) to be administered by the Trustee." (Ex. Q). The Trustee took immediate possession of the Lady May, moved the yacht from Bridgeport Harbor to Newport, Rhode Island, and readied the Lady May for sale. On June 2, the Trustee filed a motion with the Bankruptcy Court seeking permission to sell the Lady May. (*See* Trustee's Motion to Sell, Bankruptcy Case, Doc. No. 1858, a copy of which is attached hereto as Exhibit T). Thus, the Trustee has exercised his rights under the First Summary Judgment Order by taking possession and control of the yacht.[6]

## D. **The Trustee's Motion for Summary Judgment on the Second Counterclaim and Petitioner's and HK USA's Motion to Dismiss**

On April 3, 2023, the Trustee moved for summary judgment on his Second Counterclaim (the "Second Summary Judgment Motion" and collectively with the First Summary Judgment Motion, the "Summary Judgment Motions"). (*See* Adversary Proceeding, Doc. No. 185, a copy of which is attached hereto as Exhibit V). The Second Summary Judgment Motion alleged that HK USA is the alter ego of the Debtor and, as a result, the Escrow Funds are property of the Estate. (*Id.*). As he did on the First Summary Judgment Motion, the Trustee moved for and received an expedited hearing on the Second Summary Judgment Motion. (*See* Adversary Proceeding, Doc.

---

known as the Lady May II. (*See* Adversary Proceeding, Doc. No. 183, a copy of which is attached hereto as Exhibit S).

[6] HK USA has appealed the First Summary Judgment Order and will seek a stay to preclude the Trustee from selling the Lady May while its appeal is pending. HK USA and Petitioner have also filed a reservation of rights. (*See* Bankruptcy Case, Doc. No. 1773, a copy of which is attached hereto as Exhibit U). HK USA's appeal does not, and cannot, change the fact that the Trustee has possession and control over the property sought through the First Counterclaim, which *exceeds* the only relief the Trustee could conceivably have obtained from a prejudgment remedy or injunction in aid thereof on the First Counterclaim.

No. 189, a copy of which is attached hereto as Exhibit W).

By order dated April 4, 2023, Respondent required HK USA to file its opposition to the Second Summary Judgment Motion by April 14, 2023, and Respondent held a hearing on the Second Summary Judgment Motion on April 20, 2023.  (*See* April 4, 2023 Text Order, Adversary Proceeding, Doc. No. 191).  Respondent granted the Second Summary Judgment Motion on May 18, 2023.  (Adversary Proceeding, Doc. No. 221, a copy of which is attached hereto as Exhibit X).  Respondent's decision granting the Second Summary Judgment Motion determined that HK USA's assets, and in particular, the Escrow Funds, are property of the Estate.  (*Id.*).  That decision does not entitle the Trustee to any monetary relief from Petitioner or the right to recover any of her personal assets—as distinguished from HK USA's assets.

Separate and apart from the hearings on the Summary Judgment Motions, on April 11, 2023, before the hearing on the Second Summary Judgment Motion, the Bankruptcy Court held a hearing on HK USA's and Petitioner's then pending motion to dismiss the Trustee's Counterclaims (the "Motion to Dismiss").  In advance of the hearing on the Motion to Dismiss, the Trustee's counsel emailed the Bankruptcy Court to advise Respondent that as a result of the judgment on the First Counterclaim, the Fourth Counterclaim had been rendered moot:

> We write to advise the Court of the Trustee's intention not to address arguments related to the Fourth Counterclaim during the Hearing.  Specifically, because the relief requested in the Fourth Counterclaim has already been granted by the Court as a result of its Order Granting Motion of Chapter 11 Trustee for Estate of Ho Wan Kwok for Partial Summary Judgment [Adv. Proc. ECF No. 172] (the "First Partial SJ Order"), which granted summary judgment as to the First Counterclaim, the Fourth Counterclaim is moot and need not be addressed at this juncture.

(*See* April 10, 2023, electronic mail from the Trustee's Counsel to the Bankruptcy Court, copying counsel of record, a copy of which is attached hereto as Exhibit Y).

During the hearing on the Motion to Dismiss, the Trustee's counsel reiterated that the Fourth Counterclaim was moot: "Since the Court has already granted summary judgment on Count 1 of the [T]rustee's counterclaims which sought ownership of the Lady May, there's no longer a reason at this time to pursue the fraudulent transfer claims in Count 4.  And, in fact, that – Count 4 was expressly pled in the alternative for that reason."  (April 11, 2023, Trans. of Hearing at 69:1, 69:16-21, cited excerpts of which are attached hereto as Exhibit Z).

Nonetheless, Respondent denied the Motion to Dismiss by order dated April 14, 2023.  (*See* Adversary Proceeding, Doc. No. 202, a copy of which is attached hereto as Exhibit AA).  The Court stated it "will rule on the dismissal of the Fourth Counterclaim if and when it is again ripe." (*Id.* at 28).  It is unclear on what basis Respondent could have denied a motion to dismiss a counterclaim that the Trustee himself admitted was moot.  Regardless, no authority exists for the proposition that a claim that is currently "moot," and that was pled in the alternative to a count on which judgment has already been entered and on which the Trustee has already obtained the sole relief that he sought—*i.e.,* title to and possession of the Lady May—can support a prejudgment remedy or injunction in aid thereof.

### E.  There Are No Longer Any Viable Claims to Support the Orders Against Petitioner

In light of the Summary Judgment Orders, the PJR and Injunction Orders cannot be maintained.  In the First Counterclaim, the Trustee sought, and has now obtained, a judgment pursuant to 11 U.S.C. §§ 541 and 542 determining that the Lady May is property of the Estate. The Trustee has seized the yacht and is attempting to sell it. By definition, a counterclaim that gave rise to a judgment on which the Trustee has already obtained the relief that he sought cannot

form the basis of a continued *prejudgment remedy* or an injunction in aid thereof.[7]

The Second Counterclaim sought a declaration that HK USA is the alter ego of the Debtor and that its property, particularly the Escrow Funds, was property of the Estate.  (Trustee's Answer and Counterclaims, Ex. F at 60–62).  No relief or damages were sought against Petitioner.  The Bankruptcy Court has granted summary judgment on the Second Counterclaim.  (*See* Ex. X). Although the Trustee has not yet taken control of the Escrow Funds, there can be no dispute that the Second Counterclaim never sought damages against Petitioner—Petitioner has never possessed or controlled the Escrow Funds—and, regardless, the Escrow Funds are in the possession and under the control of US Bank, as escrow agent.  (*Id.* at 14).  Thus, the Trustee's judgment on his Second Counterclaim is not against the Petitioner, and regardless, the Trustee's recovery is fully secured by the Escrow Funds.

The Third Counterclaim seeks a declaration that the Debtor, not Petitioner, is the equitable owner of the entire membership interest in HK USA. The Third Counterclaim was pled in the alternative to the Second Counterclaim.  (Ex. F at 62).  As Respondent clearly (and correctly) stated in the Second Summary Judgment Order:

> If only beneficial ownership of HK USA is established as sought in the Third Counterclaim, the bankruptcy estate would not include the assets of the limited liability company – the corporate veil would have to be pierced.  If the Trustee were to succeed on the Third Counterclaim without succeeding on the Second Counterclaim, he would *control* HK USA because he would be the owner of the membership in HK USA.  However, he would not own HK USA's assets and would have to respect the corporate form, absent a subsequent judgment as to some or all of HK USA's assets.

(Ex. X at  26).

_____

[7] HK USA and Petitioner intend to seek an order staying the sale of the Lady May, but that does not change the fact that the Trustee possesses and controls the Lady May, which is greater relief than the Trustee could ever be entitled to under Connecticut's prejudgment remedy statute.

Because Respondent has determined that HK USA is the Debtor's alter-ego, and since the Trustee expressly pleaded his Second Counterclaim in the alternative to his Third Counterclaim, there is no longer any basis on which the Third Counterclaim could support the Orders against Petitioner.  Moreover, the Third Counterclaim never even sought damages from Petitioner.  The Third Counterclaim merely sought a determination that the Debtor owned 100% of the membership interest in HK USA.  Thus, the Third Counterclaim never could have served as a basis to lien Petitioner's assets—other than her interest in HK USA—or to enjoin her from using her assets—other than her interest in HK USA.

The Fourth Counterclaim seeks to recover the Lady May or its value under a fraudulent transfer theory and was pleaded in the alternative to the First Counterclaim.  (Ex. F at 63–67).  As the Trustee has himself acknowledged, the Fourth Counterclaim is "moot."  (cite, a copy of which is attached hereto as Exhibit Y).  Moreover, allowing the Trustee to maintain a prejudgment remedy on his Fourth Counterclaim would violate the rule precluding double recovery (and defy commonsense) given that the Trustee has recovered the Lady May itself.  *Gilead County Services, Inc. v. Town of Cromwell*, 432 F. Supp. 3d 46, 82 (D. Conn. 2019) ("In general, plaintiffs are not entitled to double recovery of compensatory damages for the same injuries."). Indeed, the Connecticut General Statutes expressly limit the amount of a prejudgment remedy to the amount of the prospective judgment that the plaintiff establishes by probable cause "*will be rendered in the matter in favor of the plaintiff*" after "*taking into account any defenses, counterclaims or setoffs.*" Conn. Gen. Stat. § 52-278d (emphasis added).  Since the Trustee has already seized that value through the First Summary Judgment Order, the Fourth Counterclaim cannot possibly serve as a basis to maintain the Orders.

Lastly, the Fifth Counterclaim alleges that HK USA negligently moved the Lady May from New York in violation of a court order and thereby caused the Debtor to be found in contempt. (Ex. F at 67–68).   The Fifth Counterclaim contains no allegations against Petitioner.   The Bankruptcy Court already held this when it attributed no value to the Fifth Counterclaim when calculating the amount to be secured by the Orders.  (*See* Ex.  K, Trans. at 30:12; 31:14-18; Ex. L).  Moreover, even if the Orders had attributed some value to the Fifth Counterclaim, which they did not, the Fifth Counterclaim was pleaded in the alternative to the First and Second Counterclaims.  (Ex. F at 67).   Indeed, in denying HK USA's motion to dismiss the Fifth Counterclaim, Respondent acknowledged that the Fifth Counterclaim "is premised on HK USA acting independently of the Individual Debtor"—a finding that the Second Summary Judgment Order now precludes.  (Ex. AA at 20–21).

### F.  <u>The Motion to Terminate the Orders</u>

On April 14, 2023—after the Trustee exercised his rights under the First Summary Judgment Order by seizing the Lady May but before Respondent granted the Second Summary Judgment Motion—Petitioner filed a Motion to Terminate Prejudgment Remedy and Preliminary Injunction (the "Motion to Terminate").  (*See* Adversary Proceeding, Doc. No. 206, a copy of which is attached hereto as Exhibit. BB). The Motion to Terminate sought to vacate the Orders because the Trustee had already obtained the relief he sought on the First and Fourth Counterclaims; the Second and Third Counterclaims sought only declaratory relief, and, therefore, no prejudgment remedy could issue on either of those counterclaims because no damages were sought; and the Fifth Counterclaim was not pled against Petitioner.  (*Id.* at 1–5).

Respondent did not schedule a hearing on the Motion to Terminate.  Instead, on May 3, 2023, and without any opposition from the Trustee having been filed, Respondent entered an order

13

denying the Motion to Terminate.  (*See* May 3, 2023 Text Order, Adversary Proceeding, Doc. No. 217).  Thereafter, on May 18, 2023, in the Memorandum of Decision granting the Trustee's Second Summary Judgment Motion, Respondent reiterated that, notwithstanding the Second Summary Judgment Order, the Motion to Terminate was denied without prejudice.  (Ex. X at 37).  In that Memorandum of Decision, the Bankruptcy Court did not provide any further explanation for its decision denying the Motion to Terminate.[8]

## IV.    ARGUMENT

### A.    The Mandamus Standard

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law."  28 U.S.C. § 1651.  One such writ that may issue is the writ of mandamus.  *United States v. Prevezon Holdings, Ltd.*, 839 F.3d 227, 237 (2d Cir. 2016) ("The [All Writs] Act empowers this Court to issue a writ of mandamus directing a district court to correct an erroneous order."); *Salim v. Nisselson*, Civ. No. 15-4629, 2015 U.S. Dist. LEXIS 177034 (S.D.N.Y. July 8, 2015) (issuing writ of mandamus under All Writs Act to require bankruptcy court to vacate prior entry of summary judgment and, rather than entering final judgment, issue proposed findings of fact and conclusions of law).

The writ of mandamus is an "extraordinary remedy" that is invoked "only in exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion."  *SEC*

---

[8] Curiously, the Second Summary Judgment Order states that "HK USA's cross-motion to dissolve the [Orders[] is denied without prejudice."  (Ex. X at 37).  HK USA did not file the Motion to Terminate (referred to by Respondent as the motion to dissolve).  Petitioner filed the Motion to Terminate, and Respondent has entered summary judgment determining that the Debtor, not Petitioner, is the alter ego of HK USA.

*v. Rajaratnam*, 622 F.3d 159, 169 (2d Cir. 2010) (quoting *Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 380 (2004)). *See also In re Tiana Queen Motel, Inc.*, 749 F.2d 146, 153 (2d Cir. 1984) ("Traditionally, the writ [of mandamus] has been used only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" (quoting *Roache v. Evaporated Milk Association*, 319 U.S. 21, 26 (1943))).  For purposes of mandamus, "[a] district court abuses its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or if it has rendered a decision that cannot be located within the range of permissible decisions." *Prevezon Holdings*, 839 F.2d at 237.  *See also Shovah v. Roman Catholic Diocese of Albany (In re Roman Catholic Diocese of Albany*), 745 F.3d 30, 37 (2d Cir. 2014) (issuing writ of mandamus where district court abused its discretion in finding personal jurisdiction existed against defendant in Vermont).

Three conditions must be satisfied for a writ of mandamus to issue:

> (1) "The party seeking issuance of the writ must have no other adequate means to attain the relief it desires"; (2) "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances"; and (3) the petitioner must demonstrate that the "right of issuance of the writ is clear and indisputable."

*Prevezon Holdings*, 839 F.2d at 237 (quoting *In re City of New York*, 607 F.3d 923, 932–33 (2d Cir. 2010)).  Petitioner's Mandamus Petition satisfies each condition.

### B.        Petitioner Has No Other Adequate Means to Obtain the Relief She Desires

The Motion to Terminate was filed pursuant to Conn. Gen. Stat. § 52-278k, which provides, in pertinent part: "[t]he court may, upon motion and after hearing, at any time modify or vacate any prejudgment remedy granted or issued under this chapter upon the presentation of evidence which would have justified such court in modifying or denying such prejudgment remedy under

the standards applicable at an initial hearing."  Denials of motions to modify or vacate prejudgment remedies brought under § 52-278k are not final orders subject to immediate appeal.  *Wintonbury Group v. Roantree*, 39 Conn. App. 149, 154 (Conn. App. 1995) ("An order modifying a prejudgment remedy pursuant to a motion brought under § 278k is a nonappealable interlocutory order because it is not within those orders listed as final judgment[s] for purposes of appeal under General Statutes; § 52-278l(a)"); *Gibbs v. Mase*, 11 Conn. App. 289, 293 (Conn. App. 1987) (same); *see also* Conn. Gen. Stat. § 52-278l(a) ("(a) An order (1) granting or denying a prejudgment remedy following a hearing under section 52-278d or (2) granting or denying a motion to dissolve or modify a prejudgment remedy under section 52-278e or (3) granting or denying a motion to preserve an existing prejudgment remedy under section 52-278g shall be deemed a final judgment for purposes of appeal."). Thus, Petitioner has no right to a direct appeal of Respondent's order denying the Motion to Terminate.[9]

## C.   A Writ of Mandamus Is Appropriate Under the Circumstances

### i.   *The Value of the Lady May*

Respondent was without discretion to refuse to reduce the amount to be secured by the Orders by $31,732,400—the amount set forth in the PJR Order attributable to the value of the Lady May.  (*See* Ex. A, Ex. K, Trans. at 30:12; 31:14-18; Ex. L).  It is well established that a PJR

---

[9] Incidentally, even if Petitioner could have successfully sought leave to appeal pursuant to Federal Rule of Bankruptcy Procedure 8004—a highly questionable proposition since Petitioner would have to satisfy the requirements of 28 U.S.C. § 1292(b), which requires a "controlling question of law as to which there is a substantial ground for difference of opinion"—the fact that Petitioner did not seek leave to appeal does not affect this Court's authority to issue a writ of mandamus. *Nisselson*, 2015 U.S. Dist. LEXIS 177034, at *7 (holding that failure to take direct appeal of bankruptcy court judgment did not preclude issuance of writ of mandamus); *Id.* (citing and discussing *Truck Drivers Loc. Union No. 807, Int'l. Broth. Of Teamsters v. Bohack Corp.*, 541 F.2d 312, 316–17 (2d Cir. 1976)). Thus, mandamus is the only available means for Petitioner to obtain the relief sought.

expires when the plaintiff obtains a judgment and takes possession of the property in dispute. *Town of New Hartford v. Conn. Res. Recovery Auth.*, 291 Conn. 502, 505-06 (Conn. 2009) ("Approximately four months after the court granted the application for a prejudgment remedy, the court rendered judgment in favor of the plaintiffs. . . . It awarded the plaintiffs equitable relief in the form of a constructive trust on the moneys currently held. . . . The court further ordered that the trust forward those funds to the [plaintiffs] . . . . The plaintiffs argue that the defendant's claim is moot because the attachment order expired upon isuance of the judgment on June 19, 2007. We agree with the plaintiffs.").

The order denying the Motion to Terminate cites no authority or basis for refusing to dissolve a prejudgment remedy and injunction when a judgment on the same claim that gave rise to the prejudgment remedy has entered, and the Trustee has  obtained the relief sought— and it defies commonsense to refuse to do so.  Indeed, the Connecticut Supreme Court has held that a prejudgment remedy on a claim automatically expires when a judgment enters and the plaintiff takes possession of the property it sought. *See Town of New Hartford*, 291 Conn. at 505-06. Thus, Petitioner is entitled to a writ of mandamus requiring Respondent to vacate or modify the Orders by reducing them by the amount of $31,732,400, which is the value Respondent attributed to the Lady May.[10]

---

[10] Respondent has cited the fact that Petitioner and/or HK USA have appealed the Trustee's judgment on the First Counterclaim.  (*See* Adversary Proceeding, Doc. No. 197, a copy of which is attached hereto as Exhibit CC).  However, that is irrelevant to the Motion to Terminate and this Mandamus Petition. Presently, the Trustee has the Lady May, which is the property that the Trustee sought to secure, and conceivably could have recovered, through the First Counterclaim.

ii.   _The Escrow Funds_

The Orders must also be vacated and terminated as to the remaining $37 million attributable to the Escrow Funds.  Respondent has granted the Trustee summary judgment on his Second Counterclaim, which determined that the Escrow Funds are property of the Estate because HK USA is the Debtor's alter ego.  The Escrow Funds are sitting safely with US Bank as escrow agent.  As a result, the Trustee's judgment on the Second Counterclaim is fully secured, and, in any event, does not entitle the Trustee to any damages from Petitioner.

The Trustee's remaining Counterclaims (the Third, Fourth and Fifth Counterclaims) were all pled in the alternative to the First and Second Counterclaims, and the Third and Fourth Counterclaims seek the same relief as the First and Second Counterclaims.  Therefore, the Trustee cannot recover anything further from Petitioner on account of the Third or Fourth Counterclaims. In addition, the Fifth Counterclaim—which is the only Counterclaim on which judgment has not entered that seeks relief different from that sought on the First and Second Counterclaims—asserts no conduct attributable to Petitioner. That was the reason the Orders against Petitioner attribute no value to the Fifth Counterclaim.  (_See_ Exhibits A, B, F at 67–68).

As well, the Fifth Counterclaim, which alleges that HK USA negligently caused harm to the Debtor by directing the Lady May to leave New York in violation of a court order, can no longer conceivably give rise to personal liability against Petitioner in light of the Summary Judgment Orders, which held that the Debtor, not Petitioner, controlled the Lady May and is the alter ego of HK USA.  Said differently, if the Debtor controlled HK USA and the Lady May (facts which Petitioner disputes but Respondent nonetheless found), Petitioner did not control HK USA or the Lady May and could not possibly be held liable for its movement.

The Orders must be vacated for a final reason.  None of the remaining Counterclaims seeks damages against Petitioner.  A prejudgment remedy, and by default an injunction issued in aid thereof such as the Injunction Order, (*see* Ex. N, Mar. 15, 2023 Tran. at 52:6-8 ("Number two, the preliminary injunction, or an injunction, often enters in connection with a prejudgment remedy under Connecticut law to aid the prejudgment remedy")), can only stand when the party seeking the prejudgment remedy asserts claims for, and establishes probable cause that it will recover, damages.  *Metro. Dist. Comm'n v. Conn. Res. Recovery Auth.*, Civ. No. 105034498S, 2013 Conn. Super. LEXIS 4364, *12 (Conn. Super. Oct. 1, 2013) (prejudgment remedy could not issue where "[t]he only relief requested in the plaintiff's complaint and subsequent motion to compel was for this court to compel the defendant to arbitrate with the non-neutral arbitrator selected by the plaintiff"); *Johansson v. Black*, Civ. No. 97057288S, 1997 Conn. Super. LEXIS 1034, *5–6 (April 14, 1997) ("In [CGS] 52-278(c)4(b) the 'Application for Prejudgment Remedy' states the person moving for the attachment must ask to 'attach sufficient property of the defendant to secure such sum.' The 'sum' referred to being the amount of possible recovery as a result of litigation."); *Murphy v. Hanberg*, Civ. No. 000093198S, 2002 Conn. Super. LEXIS 3833, *9 (Conn. Super. Nov. 26, 2002) (dissolving stipulated prejudgment remedy after hearing because "plaintiff has failed to meet her burden of proof to show a fair and reasonable estimate of her damages"); *MDS Consulting Servs. v. Tedford*, Civ. No. 960566222, 1998 Conn. Super. LEXIS 102, *10 (Conn. Super. Jan. 12, 1998) (temporary injunction in aid of prejudgment remedy deemed dissolved upon withdrawal of PJR application).

For the reasons set forth above, the Trustee no longer has any viable Counterclaims that i) have not gone to judgment and resulted in the seizure of the property sought by the Trustee (*i.e.,* ownership of the Lady May with respect to the First Counterclaim); ii) have not gone to judgment

and are not fully secured (*i.e.,* the Escrow Funds with respect to the Second Counterclaim); iii) are not mutually exclusive with the Summary Judgment Orders (the Third, Fourth and Fifth Counterclaims); and/or iv) seek damages against Petitioner (the Second, Third, and Fifth Counterclaims). Therefore, the Court should grant Petitioner's Mandamus Petition and order Respondent to vacate the Orders.

   **D.    The Right of Issuance of the Writ Is Clear and Undisputable**

   The purpose of a prejudgment remedy is to secure a defendant's assets to ensure that a subsequently obtained money judgment is enforceable and collectable. *Bernhard Thomas Bldg. Sys., LLC v. Dunican*, 286 Conn. 548, 557 (2008) ("The purpose of the prejudgment remedy of attachment is security for the satisfaction of the plaintiff's judgment, *should* he obtain one. . . . It is primarily designed to forestall any dissipation of assets by the defendant and to bring [those assets] into the custody of the law to be held as security for the satisfaction of such judgment as the plaintiff *may recover* . . . . " (emphasis and ellipsis in original) (quoting *Marlin Broadcasting, LLC v. Law Office of Kent Avery,* 101 Conn. App. 638, 646–47 (2007))). Once a judgment enters and the plaintiff has obtained the relief sought, there is no longer any basis to attach and enjoin assets to ensure that the judgment can be enforced, and the party whose assets that were attached and enjoined must then be free to use her assets without any interference from her former adversary or the court. *See e.g., Town of New Hartford*, 291 Conn. at 505–06.

   In this case, Petitioner is enjoined from using any of her assets because Respondent refuses to vacate the Orders—despite the fact that there is no longer any basis on which the Trustee could recover a money judgment against Petitioner. Respondent's refusal to vacate the Orders is a clear and indisputable abuse of discretion and constitutes a decision that "cannot be located in the range

20

of permissible decisions." *Prevezon Holdings*, 839 F.2d at 237.  Therefore, Petitioner respectfully requests that the Court issue a writ of mandamus compelling Respondent to vacate the Orders.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, Petitioner respectfully requests that the Court (1) issue a writ of mandamus compelling Respondent to vacate the Orders and (2) grant Petitioner such further relief as the Court deems just and proper.

Respectfully submitted,

By: */s/James M. Moriarty*
Aaron A. Romney (ct28144)
James M. Moriarty (ct21876)
ZEISLER & ZEISLER, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT  06604
(203) 368-4234
(203) 368-5485 (fax)
aromney@zeislaw.com
jmoriarty@zeislaw.com

Lee Vartan (*Pro Hac Vice*)
Sam Della Fera, Jr. (*Pro Hac Vice*)
Melissa Wernick (*Pro Hac Vice*)
lvartan@csglaw.com
sdellafera@csglaw.com
mwernick@csglaw.com
CHIESA SHAHINIAN & GIANTOMASI PC
105 Eisenhower Parkway
Roseland, NJ 07068
(973) 530-2107
(973) 530-2307 (fax)

**ATTORNEYS FOR MEI GUO**
